FILED

2012 Nov-29  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AUTO CLUB FAMILY INSURANCE CO.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:11-cv-1451-AKK** |
| **HERMAN N. MULLINS, III,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Dire circumstances purportedly lead some individuals to commit desperate acts. Faced with credit card debt and unable to pay his mortgage or to sell his home, the insured in this case purportedly set fire to his home or procured someone to do so. The insured, of course, denies these contentions. The insurer, Plaintiff Auto Club Family Insurance Company ("AFIC"), filed this action against its insured Herman Mullins ("Mullins") seeking a declaratory judgment as to the rights and liabilities of the parties under a homeowner's insurance policy. Doc. 1. AFIC has now moved for summary judgment contending that it is not liable for the loss, and the motion is fully briefed. Docs. 15, 21, and 22. For the reasons stated below, the court finds that AFIC has met its burden of making a prima facie

1

showing of arson, but that issues of fact exist that preclude summary judgment on the breach of contract claims.  Accordingly, the court **DENIES** AFIC's motion.

Accordingly, this matter is set for a **pretrial conference at 10:00 a.m. on January 9, 2013, and for trial at 9:00 a.m. on February 6, 2013, both at the Huntsville Federal Courthouse, Huntsville, Alabama**.  The attention of counsel is directed to the attached PRE-TRIAL CONFERENCE instructions, which require that counsel submit a proposed Pre-trial Order at least four business days in advance of their conference.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving

party, who is required to "go beyond the pleadings" to establish that there is a

"genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all

reasonable inferences arising from it in the light most favorable to the non-moving

party. *Id*.  However, "mere conclusions and unsupported factual allegations are

legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432

F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v.*

*Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II.  <u>FACTUAL BACKGROUND</u>

Mullins obtained a policy on May 10, 2010 from AFIC for his home and

personal contents located at 1211 Hermitage Avenue SE, in Huntsville, Alabama.

Doc. 17.  The policy excluded intentional damage committed by or at the direction

of Mullins.  Doc. 17 at 14, 16.  Moreover, the policy became void if Mullins

"knowingly concealed or misrepresented any material fact or circumstance relating

to the insurance, the loss, the presentation of the claim or any other fact or

circumstance material to the investigation and adjustment of the claim." *Id.* at 32.

This case centers on events that occurred on September 4 and 5, 2010.  On September 4, 2010, after eating dinner at home, Mullins and his daughter Anya Mullins, who lived with him, went to a 10:05 p.m. movie at Monaco Theaters. Docs. 19-4 at 7-8, 11, 14; 21 at 9; 18 at 2.  Afterwards, despite the late hour, they walked around the shopping center complex near the movie theater for about thirty minutes and then had a late meal at an IHOP restaurant before returning home.  *Id*. When they arrived home shortly after 2:00 a.m., Mullins discovered his house filled with smoke.  Docs. 19-4 at 13-14; 18-5 at 3.  Mullins contacted 911 at approximately 2:20 a.m., and the City of Huntsville Fire Department arrived on the scene at 2:33 a.m.  Doc. 16 at 2.  After extinguishing the remnants of the fire, fire fighters inspected the home and observed certain irregular burn patterns.  Doc. 16 at 3.  As a result, the fire chief called a fire department investigator.[1]  *Id*.

AFIC received notice of the fire on September 6, 2010, doc. 15-1 at 4, and assigned the investigation to Dave Seymour ("Seymour"), one of its investigative adjustors.[2]  *Id*.  As part of his investigation, Seymour obtained Mullins' authorization for release of financial information and credit history, retained GAB Business Services, Inc., which, in turn, retained Donan Engineering to conduct the

---

[1]The investigator's report is not a part of the summary judgment record.

[2]Mullins formally submitted a sworn "proof of loss" statement to AFIC claiming $120,744.97 in damage on November 15, 2010.  Doc. 19-12 at 2.

origin and cause investigation, retained counsel to examine Mullins and Anya Mullins under oath, communicated with local fire investigators and law enforcement officials, and obtained the City of Huntsville Fire Report, the Police Incident Report of the alleged suspicious activity prior to the fire, and recorded statements from Mullins, Anya Mullins, and Shara Jarboe, Mullins' realtor. Doc. 15-1 at 4-5.

To ascertain the cause of the fire, Ronald Eaker ("Eaker"), a senior certified fire and explosion investigator with Donan Engineering, inspected the damage on September 8, 2010.  Doc. 18-5 at 2.  Based on the inspection, Eaker concluded that the fire had an incendiary origin because "the fire originated in four separate and unconnected locations," "[n]o accidental ignition sources were present," and "[t]he introduction of an ignition source was needed to initiate this fire event, and deliberate human intervention is evident." Doc. 18-5 at 5.  During his inspection, Eaker obtained samples from each of the four fire locations and submitted them to Analytical Forensic Associates for analysis.  Doc. 18-5 at 5. The tests revealed the presence of gasoline residue on each sample.  *Id*.  Donan Engineering relayed these findings to GAB Business Services which, in turn, notified Seymour.  *See id.*

In addition to the cause and origin determination, Seymour also reviewed Mullins' finances.  The financial information revealed that Mullins (1) had listed

his home for sale unsuccessfully numerous times prior to the fire, doc. 19-3 at 14,

(2) was significantly behind on his $131,989.13 mortgage, docs. 15-1 at 4; 19-2 at

9, 11, (3) household lost approximately $20,000 in income when his wife left him

and returned to the Ukraine, doc. 19-3 at 7, and (4) had approximately $15,000 in

credit card debt from living off of one of his credit cards from 2008 to 2009, docs.

19-2 at 16, 19-3 at 13.  Mullins also relayed in a recorded statement that, on

occasion, he had to "make a decision, whether I want to eat, pay the mortgage, or

pay the utilities."  Doc. 18-3 at 6.  Finally, Seymour learned that Mullins held an

estate sale and an auction of personal things in his home just prior to the fire.  Doc.

19-3 at 4, 12.

Seymour also obtained a recorded statement from Jarboe, Mullins' realtor,

on December 8, 2010.[3]  Doc. 19.  Jarboe shared specific conversations Mullins had

with her about setting his house on fire.  *See id.*  Specifically, Jarboe reported that,

approximately two weeks prior to the fire, Mullins told her "how badly he needed

to sell [his] house due to financial and health reasons," that he "was approached by

a guy at work who suggested a fire would solve his problems," and that Mullins

relayed that the co-worker either implied or stated that he was "familiar with this

---

[3]Jarboe also provided a written witness statement to the Alabama Bureau of Fire
Prevention on October 13, 2010.  Doc. 19-7.

happening and might could be of help." Doc. 19-7 at 3.   Allegedly, Mullins

conveyed also that "he later questioned this person about how it (the fire) might

happen. They discussed that since it was an old house with all the different

additions something like that would not seem too strange or unlikely," that the

"only people who knew would be [Mullins], [Jarboe], his daughter, and the person

setting the fire," and that Mullins "thought Labor Day weekend might be a good

time for it to happen."  Doc. 19-7 at 3-5.  To perhaps further underscore his intent,

Mullins allegedly "handed [Jarboe] the papers detailing his insurance," and stated

"he understood the amount of the coverage to say $300,000 and that it was more

than he would make or clear if he sold the house," and that "this [arson] would

allow him to go ahead and go through with purchasing the property he currently

had an offer on."[4]  *Id*. at 4.  Finally, Jarboe reported that Mullins contacted her

after the fire to tell her "if [she] was questioned, how [she] should answer. . . and

[he gave her] scenarios and specific people that [she] should mention." Doc. 19-7

at 7.

Based on the findings of the investigation, Seymour concluded that the fire

was set intentionally by Mullins, or with Mullins' knowledge.  Doc. 15-1 at 5-13.

---

[4]Mullins had a contingent contract to buy a condominium, which would have allowed
him to downsize and save money.  *See* doc. 19-3 at 11.

Consequently, AFIC informed Mullins by letter dated April 30, 2011 of its decision to file this declaratory judgment action. Doc. 19-13 at 2; *see also* doc. 1.

Mullins challenges the arson determination and asserts that he lacked the opportunity to start the fire because he and his daughter were away from home from approximately 9:00 p.m. until shortly after 2:00 a.m.  Docs. 21 at 6; 19-4 at 8. In support of his defense, Mullins provided a movie receipt showing that he purchased two movie tickets at 10:03 p.m. for the 10:05 p.m. movie, and a IHOP receipt showing that two guests opened a ticket at 1:11 a.m., purchased two meals, and then closed the ticket at 1:55 a.m.  Doc. 19-11. at 2.  Although Mullins locked the doors, admits being the last person inside his home that evening, and there was no forced entry, doc. 19-4 at 8, Mullins blames the fire on an intruder nonetheless. To explain how someone else may have entered the locked house to set the fire, Mullins reported that his realtor Jarboe had a key, that he had a key in a lockbox outside his home for other realtors to use, that several potential buyers viewed the house over the past few months, and that his wife, who had returned to the Ukraine, had two sets of keys.  Docs. 18-5 at 3; 19-4 at 4.  To further support his contention, Mullins shared numerous suspicious occurrences prior to the fire when he thought someone entered his home, while he was there, even though he did not see the alleged intruder.  *See* docs. 19-3 at 16; 19-4 at 3-6; 19-5 at 2; 18-7 at 3.

Indeed, Mullins reported one such incident to the police that generated the following incident report: "complainant stated he thought someone had entered his home through the back door and then left through the back door locking the door behind them.  No force was used and nothing was missing."  Doc. 18-7 at 3.

## III.  ANALYSIS

AFIC asserts breach of contract claims against Mullins.[5] To prevail in a declaratory judgment action on a breach of contract claim against an insured, an insurer may raise an affirmative defense to the contract, such as arson or material misrepresentation after the loss.[6]  *See Great Southwest Fire Ins. Co. v. Stone,* 402 So. 2d 899, 900 (Ala. 1981).  Generally, an insurer must also prove the absence of bad faith.  *See Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1, 6 (Ala. 1981) ("Every contract carries with it an implied in law duty of good faith and fair dealing.").  However, because Mullins has not raised a counterclaim of bad faith refusal to pay his claim, *see* docs. 5 and 21, only the breach of contract claims are before this court.

---

[5]Count 1 - breach of contract: concealment and misrepresentation provision and violation of Code of Alabama § 27-14-28; Count 2 - breach of contract: coverage excluded for losses intentionally caused by an insured under Intentional Loss policy provision; Count 3 - breach of contract: concealment and misrepresentation provision; Count 4 - disputed claim value.  Doc. 1.

[6]AFIC asserts both defenses and contends that Mullins caused or procured the fire, and that Mullins intentionally misrepresented or concealed material facts in his sworn proof of loss statement.  Doc. 15-1.

**A.**   **AFIC has established a prima facie case of arson.**

Arson by an insured is an absolute defense to an action upon the policy.  *See Mueller v. Hartford Ins. Co. of Ala.,* 475 So. 2d 554, 557 (Ala. 1985) (*citing Hosey v. Seibels Bruce Grp., S.C. Ins. Co.,* 363 So. 2d 751 (Ala. 1978); *Am. Fire & Cas. Co., Inc. v. Archie,* 409 So. 2d 854 (Ala. Civ. App. 1981); *Long v. Ins. Co. of N. Am.,* 670 F.2d 930 (10th Cir. 1982)); and *see Stone,* 402 So. 2d at 900.  To prove arson, the insurer must show evidence of: 1) incendiary origin of the fire, 2) motive of the insured, and 3) unexplained surrounding circumstances implicating the insured.  *Stone*, 402 So. 2d at 900.  The "insurer's burden of proof is not particularly heavy." *Fondren v. Allstate Ins. Co.,* 790 F.2d 1533, 1535 (11th Cir. 1986).  Moreover, the insurer can prove an arson defense either by direct or circumstantial evidence, and it is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt; a preponderance of the evidence will suffice. *Stone*, 402 So. 2d at 900.

   *1.* *Incendiary origin of the fire*

Mullins does not challenge AFIC's contention that the fire had an incendiary origin.  *See generally* doc. 21.  Instead, Mullins contends only that he did not set the fire or procure someone to do so.  Unfortunately, innocence proclamations are insufficient to refute the first prong of AFIC's defense.   Based on the evidence

before this court, AFIC has established that the fire had an incendiary origin.

Specifically, AFIC provided (1) the City of Huntsville Fire Report that outlined the

abnormal burn patterns the fire fighters detected, doc. 16 at 3, and (2) Eaker's

findings regarding the incendiary origin of the fire, doc. 18-5 at 6.  According to

Eaker, based on the burn patterns and the actual fire damage, Mullins' home had

four separate and unconnected fires: in the north den, kitchen, dining room, and

living room.  Doc. 18-5 at 5.  Based on these findings, Eaker ruled out an

accidental cause and concluded that the fire started because of a deliberate

dispersion and ignition of an ignitable liquid consistent with gasoline.  *Id*.  To

further test his preliminary findings, Eaker obtained four samples from the home

and sent them to Analytical Forensic Associates for testing.  *See* doc. 18-6.  The

laboratory analysis confirmed that the samples contained gasoline.  *Id*.

Consequently, Eaker classified the fire as incendiary because "1.  Foul play was

evident.  2. The multiple areas of fire origin are established. [and] 3. The ignition

source is identified." Doc. 18-5 at 6.  This evidence, which Mullins failed to rebut,

establishes the incendiary element of AFIC's arson defense by a preponderance of

the evidence.

11

2.    *Financial motive*

As for the "motive of the insured" prong of its arson defense, AFIC asserts a financial motive to set the fire, and presents evidence of Mullins' financial distress - i.e.,  unable to sell his home or make his mortgage payments, significant credit card debt, and loss of wife's income when she left him.  *See* docs. 15-1 at 7, 17; 19-2 at 6-16; 19-3 at 7-13. To further bolster the dire situation Mullins faced, AFIC provided the written and recorded statements of Mullins' realtor that (1) Mullins told her how badly he needed to sell his home due to financial and health reasons; (2) that Mullins talked to a co-worker about burning his house to collect the $300,000 insurance money that would yield more than he could from selling the house; and (3) that Mullins called her after the fire to coach her on how to respond to questions.   Doc. 19-7 at 3, 7.

This evidence of financial distress is sufficient for AFIC to establish that Mullins had a motive for arson.  *See e.g. Bush v. Ala. Farm Bureau Mut. Cas. Ins. Co., Inc.*, 576 So. 2d 175, 179 (Ala. 1991); *Fondren*, 790 F.2d at 1535.  In making this finding, the court recognizes that Mullins maintains his innocence.  In fact, this court makes no finding of guilt - that is, after all, for a jury in a criminal case to decide.  However, the law does not require AFIC to prove its arson defense beyond all reasonable doubt.  *Stone*, 402 So. 2d at 900.  Rather, AFIC has to show only

that, based on the preponderance of the evidence, Mullins had a financial motive to

intentionally burn his home.  Critically, Mullins offered no evidence to rebut the

dire financial picture AFIC uncovered.  Instead, Mullins only challenged Jarboe's

contentions and offered blanket denials, asserting that he "did not talk to a co-

worker about burning his house and details about how the fire would happen," that

he "did not explain to Shara Jarboe that his $300,000 in insurance coverage was

more than he would make if he sold the house and, in fact, [his] claim was for less

than $300,000," and that he "did not discuss setting a fire at his house with Shara

Jarboe and certainly never told her that Labor Day weekend would be a good time

to set a fire."[7]  Doc. 21 at 7.  These denials regarding Jarboe's contentions,

unfortunately, do not rebut the financial motive AFIC showed.[8]  In fact, the court

---

[7]Mullins challenges Jarboe's statement to the Alabama Bureau of Fire Prevention and her recorded statement to AFIC as inadmissible because "[n]either of these statements are verified and under oath."  Doc. 21 at 8.  The court disagrees.  Given that AFIC obtained both during its investigation of Mullins' claim, AFIC will be able to authenticate both at trial either under Federal Rules of Evidence 901(b)(1) and (7) or through Jarboe.  As such, the documents are properly before this court.  Moreover, to the extent Mullins also challenges Jarboe's recorded and written statements as inadmissible hearsay, the statements are not hearsay since AFIC is not offering them here to prove that Jarboe's assertions are correct.  *See* FED. R. EVID. 801(c)(2).  Alternatively, the statements are admissible as statements by a party opponent.  *See* FED. R. EVID. 801(d)(2)(A) and (D).

[8]Mullins' denials are similar to those made in *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533 (11th Cir. 1986).  After a fire damaged the Fondrens' home, Allstate raised the arson defense.  790 F.2d at 1535.  To prove motive, Allstate introduced evidence of the Fondrens' extreme poor financial condition and that their plan to move to another state hit a snag because they could not sell their home.  *Id.*  Like Mullins, the Fondrens denied setting the fire or procuring someone to set it and contested their dire financial situation.  The court found the denials insufficient to rebut the proof Allstate presented and held that Allstate established, by a preponderance of the evidence, that the Fondrens had a financial motive to set the fire.  *Id.* at 1536.

assumes that Mullins never relayed the alleged information to Jarboe.
Nonetheless, because AFIC has shown that it had Jarboe's information when it made its decision and that Mullins' overall dire finances provided it the arguable basis it needed to conclude that Mullins had a financial motive to set the fire or to procure someone to do so, the court finds that AFIC met its burden of establishing a motive.

        3.     *Unexplained surrounding circumstances*

As a final justification for its arson defense, AFIC contends it has sufficient evidence of strange, unexplained surrounding circumstances that implicated Mullins and that Mullins had sufficient opportunity to set the fire or, alternatively, procure someone to do so.  Doc. 15-1 at 17.  Specifically, AFIC contends Mullins was the last person in the house and locked the exterior doors when he left, doc. 19-4 at 8, and that Mullins had the opportunity to return home during the movie or later to set the fire since the distance between Mullins' home, the movie theater, and IHOP was only approximately fifteen to twenty minutes,  doc. 15-1 at 18. Mullins rebuts the contention by asserting that an intruder may have used a key from the realtor's lockbox to set the fires.  To support this contention, Mullins offers evidence of alleged intruders – that he did not see – entering his home while Mullins was there.  These alleged intruders, like the mysterious arsonist, stole

nothing even though Mullins had multiple computers and guns in plain sight. Docs. 19-3 at 9; 19-4 at 6; 19-5 at 3.  These implausible explanations, especially in conjunction with the other evidence AFIC presented, are precisely the sort that courts have found sufficient to satisfy the strange, unexplained surrounding circumstances prong of the arson defense.  *See, e.g.*, *Stone*, 402 So. 2d at 900-01 (finding that a nightclub operator had the opportunity to commit arson since he and his girlfriend were the last to leave the club prior to the fire, they locked the doors, and left around the same time the fire started); *Crown Colony Distrib., Inc. v. U.S. Fire Ins. Co.*, 510 F.2d 544 (5th Cir. 1975) (insurer presented sufficient evidence of strange surrounding circumstances by showing insured doubled its inventory, obtained a new expensive line of jewelry, and nearly doubled its fire insurance coverage, and by showing that the manager was on the premises at the time of the arson preparations).

Although AFIC has established a prima facie case of arson, the court recognizes that summary judgment is an extraordinary remedy in arson cases and that it is precluded if a question of fact exists on any of the elements of AFIC's arson claim.  *See Allstate Ins. Co. v. Jackson*, 2007 WL 3287369, at *7 (S.D. Ala. Nov. 5, 2007).  Moreover, to prevail on summary judgment, the insurer must show more than a mere preponderance of the evidence; rather, it must show that the

evidence is "so overwhelming that [it] is entitled to judgment as a matter of law on the basis of arson." *Id*.  Based on the case law, although Mullins failed to rebut the bulk of AFIC's evidence, the court cannot say that AFIC has presented the overwhelming evidence it needs to show that it is entitled to summary judgment. Again, Mullins does not dispute the incendiary nature of the fire, or the evidence of his financial distress.  Instead, he rests his case solely on the unusual surrounding circumstances and his contention that an intruder entered his house.  Given Mullins' denial that he set the fire, the fact that he left a key to his house in the outside realtor's lock box, and his prior reports to the police about the mysterious intruders, he is entitled to present his innocence proclamations to a jury.  As the *Jackson* court held, "[t]he fact that [the insurer] has produced evidence raising an inference that the insured willfully burned the property covered by the policy simply means there is sufficient evidence for the issue to go to the jury." *Jackson*, 2007 WL 3287369, at *7.

### B.   <u>Misrepresentation after the loss</u>

In the alternative to the arson defense, AFIC also alleged that Mullins made material misrepresentations concerning his insurance claim after the loss occurred, and that under both the terms of the insurance contract and the Code of Alabama § 27-14-28 (1975), the contract is void.  The policy explicitly states that the "entire

policy is void and all coverages forfeited, and payment will not be made to any **insured**, if before or after a loss, any **insured** has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, the loss, the presentation of the claim or any other fact or circumstance material to the investigation and adjustment of the claim."  Doc. 17-1 at 7 (emphasis in original). Moreover, Alabama Code Section § 27-14-28 provides that "[n]o misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such representation is made with actual intent to deceive as to a matter material to the insured's rights under the policy." ALA. CODE § 27-14-28 (1975). The Alabama Supreme Court held that all insurance contracts must be read to include this statutory expression of public policy.  *Ex parte State Farm and Cas. Co.*, 523 So. 2d 119, 120-21 (Ala. 1988).  However, "a slight exaggeration of the amount of the value of the property destroyed will not defeat the claim entirely." *Hartford Fire Ins. Co. v. Clark*, 61 So. 2d 19, 27 (Ala. 1952).  "To bar recovery, the overvaluation must be so extravagant as to lead to the conclusion that it was due not to a mistake in judgment but to an intention to defraud." *Id.* (citations omitted).

As Mullins contends that he did not start or procure the fire, the court assumes he correspondingly contends that he made no material misrepresentations

and had no intent to deceive AFIC regarding his claim, though he does not explicitly say so.  *See generally* docs. 5, 21.  Mullins appears to have complied with all requests AFIC made during the investigation including submitting to an examination under oath and providing a release for his financial information, docs. 19-2, 18-4.  Moreover, AFIC offered no evidence that the $120,744.97 Mullins claimed in his sworn statement of loss was an incorrect valuation of the damage. Doc. 19-12 at 2.  As such, there are genuine issues of material fact on the question of whether Mullins' alleged misrepresentations to AFIC in his statement of loss were made with the requisite intent to deceive.  *See Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1359-60 (S.D. Ala. 2010) (citing *Murphy v. Droke,* 668 So. 2d 513, 517 (Ala. 1995) ("Where the plaintiff presents substantial evidence that the defendant had an intent to deceive, it is for the jury to decide whether the defendant actually had such an intent."); *State Farm Mut. Auto. Ins. Co. v. Borden,* 371 So. 2d 28, 30 (Ala. 1979) ("Whether specific conduct constitutes an intent to deceive is a jury question.")).  Consequently, the court **DENIES** AFIC's motion for summary judgment on the basis of Mullins' alleged material misrepresentations made after the loss.

## IV.  <u>CONCLUSION</u>

Based on the totality of the evidence, although AFIC established a *prima facie case* of arson by demonstrating that it had a credible reason to believe that Mullins had the opportunity to directly cause or solicit the fire, issues of fact exist that preclude summary judgment.  Specifically, Mullins' reports to the police about alleged break-ins – despite their implausibility based on his description – and the key access to the house through the realtor's lockbox provide a basis for Mullins to argue at trial that he can overcome AFIC's prima facie case.  Therefore, the court **DENIES** Plaintiff AFIC's motion for summary judgment on its breach of contract claims.

**Done** the 29th of November, 2012.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**HUNTSVILLE, ALABAMA**

This case is  set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure.  A conference-type hearing will be held in chambers in the Federal Courthouse in Huntsville, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions.  Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating  workable procedures and deadlines for remaining discovery matters.  At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov)a proposed Pre-trial Order in WordPerfect format, furnishing other counsel with a copy.  It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (www.alnd.uscourts.gov/Kallon/Kallonpage) to illustrate the format preferred by the court and also to provide additional guidance and instructions.  Each order must, of course, be tailored to fit the circumstances of the individual case.

20

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike.  The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute.  This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing.  Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT  <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.